221-0709-WC Lawrence Dickman, Appellant by Daniel Murphy v. Illinois Workers' Compensation Comm'n, City of Elgin and Elgin Police Department, Appalese by Fred Beard. Mr. Murphy, you may proceed. Good morning. May it please the court counsel, my name is Daniel E. Murphy, and I represent the appellant Lawrence Dickman in this case. Um, we would ask that the commission decision be reversed in part, and that the petitioner be awarded a loss of trade or occupation, permanency benefits, medical benefits, TTD, and maintenance benefits, and leave the remaining portions of the commission's decision um, as is. Mr. Dickman was an Elgin police officer injured on January 12th of 2014. He was injured when he did the splits on an icy street at a crime scene while adjusting crime tape. Both of his hands went down to the ground, and he injured his legs and his low back in the couple of different bases for appeal. The initial one that we've asserted is that the commission erred in failing to find Officer Dickman disabled from police work in 2014. The commission found that Officer Dickman was at MMI on November 7th of 2014 in the decision that is when they ended TTD payment. The commission based this decision on Dr. Jay Levin's IME report from October 15th of 2014 and his deposition. Dr. Levin, Dr. Jay Levin found that the petitioner was at MMI at that time, and that a functional capacity evaluation or FCE should be performed. What was that date, Mr. Murphy? The date of Dr. Levin's report was 10-15-14. The functional capacity evaluation was actually performed, and that was performed on November 20th of 2014 by the physical therapists at ATI. That FCE determined at that time that the petitioner was at a medium physical demand level. Police work was at a very high level of physical demand. Therefore, he was not able to pursue full-duty police work in the future based on his injuries. Mr. Murphy, if I might interject, you put medical expenses on the table here in your argument. Am I correct? Yes, Your Honor. Okay. The commission basically said no medical after, say, November 20th or whatever the date was. Is that correct? Yes. I think the date was around 11-07-2014, although they ordered the FCE to be paid for because that was something that Dr. Jay Levin and his IME said that an FCE should be. Okay. Now, here's my question, and it was unclear even that date in the briefs. Were there any medical expenses from the date of the incident up to, say, let's just go out to 11-20, the date of the FCE? Yes. He was treating with Dr. Pop, Fox Valley Orthopedic. Did the commission order those medical expenses during that period of time? My recollection is that they ordered everything up until the date of 11-07-2014 plus the functional capacity evaluation cost. That's my recollection. Well, okay. Is that their decision that they awarded up through then? I believe so. Okay. Thank you. I think also that the City of Elgin had paid those expenses through that date. Really, what I think is at issue with regard to the medical is the subsequent surgery. Okay. Really, you're looking at medical after the FCE? Yes. Yes, Your Honor. Okay. Thank you. So, the FCE was performed on the 20th of November of 2014. Then five days later, the City of Elgin, through the collective bargaining agreement, set up with Dr. Rodarte a fitness for duty evaluation. Dr. Rodarte evaluated him at that time and concluded that without any conclusion about cause that Mr. Dickman could not return to full duty police work and that that was a permanent restriction. He primarily based it on his review of the functional capacity evaluation. At about that time, his treating physician from Fox Valley Orthopedic, Dr. Popp, had put him at MMI on December 4th of 2014 and gave him a permanent restriction that he could not return to police work due to the aggravation of his preexisting degenerative back condition and essentially gave him the restrictions set forth in the functional capacity evaluation. Counsel, you've attempted to evaluate that letter that was sent by administrative aid in the police department as some type of a binding judicial admission, right? Yes. Well, I've got two questions on that, which I'm troubled by that. First of all, Mrs. Cohen, who was the author of the letter, there's no evidence she's a medical doctor, that she had anything to do with examining the claimant or any medical records. So where is this matter within her personal knowledge? How does she know? I'm sorry, I didn't mean to interject. I think that it is what she had done in that January 26, 2015 letter is informed the petitioner of the results of Dr. Rodarte. Right, that's exactly what she did. But how is that a binding judicial admission in this proceeding? I think that it is a clear, deliberate statement by a party about a concrete fact within the party's knowledge. How is that within Cohen's knowledge? She has no knowledge of that, no personal knowledge. Well, I think that it is different from the case that was cited where the individual employee had testified. I think it was the Dyckmiller case. But I agree that, of course, she did not do a physical examination. And for that reason, it couldn't be through personal knowledge as a physician. However, she did recite the factual matters correctly. And the city adopted and ratified that position. And everybody has a problem. Finish your thought. Go ahead. Because I see another problem with this theory here. Do you want to finish your thought? Oh, yeah, I think I was. I'm sorry. Okay. In order to be a judicial admission, the statement has to relate to a matter of fact, not a matter of opinion. The case law says that a statement must not be a matter of opinion. It was going to constitute a binding judicial admission. This is an opinion. She's not making any statement of facts. Is she? Well, I think that the fact that she is stating are the opinions of Dr. Rodarte and the functional capacity evaluation. I think those are facts that have been adopted or ratified. To the extent that they are opinions of the physician, of course. But I think that they're factual. And that's what everybody acted upon. And so to that extent, I think that it would be clear and deliberate statement by a party about a concrete fact. The fact being that at that particular time, no one had indicated that he was not disabled from police service. He then, of course, filed for the police pension with the board as a result of receiving that and changed his position. Alternatively, if and I understand your reticence about the judicial admission, I think that it may be a situation of waiver where an intentional voluntary and intentional relinquishment of a known right because the city is taking the position in the collective bargaining situation that he can no longer work and is no longer allowing him to work. And at the same time, and took that position for 16 months until April 27, when of the 2016, when Dr. J. Levin saw the petitioner a second time and simply said, well, he can return to in all candor, you have sort of a battle of the experts. I mean, the respondent, the city's relying on the medical opinions, causation opinions of Dr. J. Levine, or Levin, you've got Dr. Cole and Dr. Suchi. But isn't that up to the commission to decide which expert they wish to rely on or which expert to give more credibility to? I think it does come within the manifest way to the evidence. And I think it becomes a credibility issue. And I think that credibility issue Dr. Levin, Dr. J. Levin, suggested that an FCE be done. He never ever reviewed the FCE. The FCE is an objective type of test to set forth what the disabilities are of an individual at a given time. And that was never commented on. He claimed never to have seen that. So it's as a result of missing that really significant piece of the puzzle. I think that his opinions are not credible because he has not seen it. Let me interject. I also rely... Dr. J. Levin did not review all the claimant's diagnostic images and all of his treating medical records through December 20, 2016. You're saying he... I am saying that his testimony, he admits that he never saw the functional capacity evaluation that was ordered to be paid for by the commission. And that he testified clearly that he never saw that. And he never saw Rodarte's report either. He didn't review the FCE, but he did testify, did he not, that he reviewed all the claimant's diagnostic images, all those treating medical records, including his chiropractic records. Did he not say that? Yes, he did say that. Another doctor that we are relying on is the treating physician, Dr. Popp. And Dr. Popp clearly indicated in his records that he thought that the accident aggravated the preexisting degenerative condition and that he had permanent restrictions and could not return to police work as well. So we have Dr. Popp... Counsel, I have a few questions. I want to back you up to the medical expenses. I'm reading from the arbitrator's decision. The arbitrator never awarded the plaintiff any medical expenses other than the FCE. In fact, it says respondent has not paid all appropriate charges for all reasonable and necessary medical expenses. And then goes on to say only that they'll pay for the FCE subject to a credit. So the question becomes, if he had medical expenses related to an injury that they found to arise out of in the course of, what happened to the medical expenses? I think that I was mistaken when I spoke before, I apologize. I think what had happened was that the city of Elgin had paid the medical up through that time. Counsel, if that's the case, then the arbitrator should have done what he did with TTD. He should have awarded the TTD and then granted them a credit for the amount, which he did in relation to the TTD. And the commission affirmed and adopted this decision. So how do we know that they paid anything? I don't, I guess based on your review, I think you're correct in what you're saying. Okay, Mr. Murphy, you'll have time and reply. The red light is on. Tom have any more questions, Bill? Tom said he had some questions. No, I just wanted to get one in before his time was run out. Thank you. Okay. Mr. Beer. Morning. Good morning, justices. My name is Fred Beer. On behalf of the Pele City of Elgin, the city of Elgin's position that the decision of the arbitrator of the commission should be affirmed. Again, the relevant standard of proof is manifest way to the evidence and the review in court should not, as Justice Hudson said, that should substitute its decision since it's more of a battle of the experts case rather the appropriate test is whether there's sufficient evidence in the record to support the commission's determination. It's my understanding regarding the medical bills that all the medical bills were paid through other than the FCE. And so that's what the commission, that's why the commission said granted them a credit. So that's my understanding of it. But they granted him a credit only as to the FCE. If they had paid anything, they never awarded any medical bills. Right. Because they've already been paid. Hold on. Take a look at the arbitrator's decisions. He awards the TTD and then grants a credit for what had been paid. Don't you have to award it first before you grant a credit? Yeah, if you look at the decision, I think that's correct. But I'm thinking what the facts were is that the city paid for everything other than this functional capacity evaluation. I think that was intent. Maybe the decision could have been clearer, but that was just my understanding. Apparently, both you and your opposing counsel don't have any issue about medical, the date of injury up through what at least the arbitrator and commission say is the resolution of the injury. Right. That's that's correct. I'm half Belgian. Well, I think I heard that on behalf of Mr. Murphy. Yeah, I think he did, too. That's correct. Okay. All right. Record. Okay. Okay. And then going on, basically, the commission properly adopted the opinions of Dr. Jay Levin, who found that the January 12th accident caused a temporary lumbar myofascial strain and temporarily aggravated his degenerative arthritis in the lumbar spine. And he found that for multiple reasons, both his physical exam, they had local tenderness in his spine and instead had had no had no local tenderness in the lumbar spine, but instead had traverse low back pain, discomfort consistent with myofascial complaints. And the other major finding was this May 16th, 2016 E.M.G. of the left leg, a lumbosacral peripheral spinal muscles. He reviewed that as well. That was a normal study. And Dr. Levin Levine opined that this negative E.M.G. would not suggest any nerve roots in the lumbar spine were identified as having radiculopathy relating to any injuries prior to 68 weeks prior to the E.M.G. The last treating doctor, Dr. Ganju, also reviewed the E.M.G. and the April 27th, 2016 MRI of the lumbar spine and opined that his symptoms related to degenerative L3, L4 synoviosis and a degenerative condition. There was no instability. And so she recommended the less invasive surgery at the L3, L4, less invasive than the fusion that was previously recommended and the decompression of the synovial cyst. So, and then the other thing that supports the in the record that supports the commission's decision is that his symptoms, Mr. Dickens symptoms, low back symptoms and problems prior to the accident in January 12th, 2014, were nearly identical to the back symptoms and problems that he had when he treated with the chiropractor in the summer of 2013. And these symptoms included difficulty sitting with his police squad car due to his low back pain. His back pain inhibited his activity. He had back pain at the four out of 10 level. It was dull, aching, burning on both sides. The symptoms did not improve. His pain symptoms were aggravated by lifting and changing positions. The pain radiated to both buttocks, muscles. Well, isn't Mr. Beer, I mean, we don't want to go through the whole journey. Okay, that's fine. I mean, isn't this case about from the commission arbitrator standpoint, an aggravation of a pre-existing condition? Right. And that's correct, but his symptoms were the same. And so there was, I guess it was aggravated, but what the commission found that was a temporary aggravation. And by August, at latest August 20th, 2015, under Dr. Pop's records, his low back pain was back to his baseline of three to four out of 10. So which was below his baseline of four to 10 when he was treating with the chiropractors in summer of 2013. So yeah, it is. And that's what they found. There was a temporary aggravation of his symptoms. They is not contesting that. And so yeah, it is. That's what it came down to. And, and although, yeah, and so but the commission found that, again, that the that based on the battle, the experts that Dr. Levin was more persuasive because he reviewed all the medical records, the functional capacity evaluation that council mentioned, it was it, whatever reason he didn't review, it appeared that the nurse case manager sent it to him. But he was he was he he did review the other other documents which referred to it. He was talking, he was asked about it in his evidence deposition. And he said that, you know, these types of assessments were would be less relevant, because that was back in 2014. And he exam and he had surgery after them, he examined him after then. So he was so he didn't agree with it. But he saw, you know, since he had subsequent surgery, treatment, and he examined him the last doctor examined all the way up to October of 2016, that he was basing his opinions on his own, his exams and review of all the medical records, diagnostic images, other than the the functional capacity evaluation. But he was asked about it. And he didn't change any of his opinions. When he was confronted with that, or how you want to say presented with it to him in his evidence deposition. So that's Yeah, I mean, we don't have to, as you said, I don't have to go through everything in the brief. But that's basically was a battle of the experts case, the commission came down on the side of Dr. Levin. I think that's manifest weight of the evidence. I think there's there's there's ample information and evidence in the record to support that. And so on that basis, I think it should be affirmed. Regarding the I agree that with the this judicial admission that again, this was an opinion that the Elgin in that letter from the Elgin human resource person were with Dr. Rodarte's fitness for duty exam. And so these were a medical opinion, either it's her either it's well, she it's not within her, her knowledge, because she's not a medical doctor. And it's either way, it's a medical opinion and opinions are concrete facts. And they're also one of the cases cited by counsel in his reply brief, the Edwards versus Addison fire protection case, that also supports the commission's decision because in that case, wasn't a workers comp case, but it was a pension case, the fire district originally found that the firefighter had a latex allergy that made it dangerous for the firefighter to work. But at the administrative hearing at the pension board, they found they the final decision that the firefighter was not disabled due to firefighters. So it's my position that it's same thing kind of a similar even if you have an employment situation, that's not binding and workers comp, it's the commission that decides the ultimate issue not not, you know, and it's a medical opinion. That's one of the issues in the case. It's not a concrete fact we have conflicting medical opinions going to battle the experts, the commission came down on the side of the Dr. Levin. And, and, and, and that's basically it. So it's the, there's no waiver. I know he's, he's argued a council's argued that there's waiver, there's there's no waiver provisions in the workers compact that would apply that I'm aware of at all that would apply. So the one case he cited was had nothing to do with the workers compact. We've talked about the medical services, the TTD nature and extent of the injury against Elgin's not contesting any of those findings. And for those reasons that it's the Elgin would, it's their position that the commission's decision should be approved. And since the parties aren't at issue with the medical, if there needs to be some clarification on a medical fine, but I think the party's already in agreement on that. So and if you have any questions, go for it. Any questions for council? No, don't believe there are. Thank you. Thank you, Mr. Mayor. Thank you, Mr. Murphy. You may reply. Thank you, Your Honor. With regard to the aggravation of pre preexisting condition, the testimony of the petitioner was that he had different symptoms after this particular accident, the symptoms being that he had pain radiating into both buttocks and into the left, into the left hip. So that is different from what he complained about within the five months before that, with regard to the manifest, with regard to the issue of the battle of the experts. As far as that's concerned, and the manifest weight of evidence standard, the way that this this decision is written is that the the offending L3 L4 synovial disc cyst rather had entirely disappeared on October the 9th of 2014. And the evidence is otherwise the doctors are agreed that it didn't disappear and that it was there the entire time. So clearly, based on that finding alone, that finding the opposite conclusion is clearly apparent because the doctors agree that the cyst was there at that time. And Dr. Pop had indicated that it was the same. He thought it was the same size as it was in the prior MRI. With regard to I guess when we get in talking about what I think are the de novo review issues, the legal issues, it's just it is a really strange paradox to me that Elgin under the collective bargaining agreement can hire Dr. Rodarte, who determines he's disabled, they can then take the position that he's disabled from doing police work, forcing him into the pension system. And then in the workers comp case, legally pivot from that, and decide that, oh, no, he's not disabled. I think that paradox and that inconsistency is really at the heart of this case. And while I, I think it's taking opposite positions in regard to the same exact situation by the same party. Council, I think your argument certainly has some intuitive appeal. But my question would be, can you refer us to any case law that says the city is prohibited from doing that? I just think in the interest of fairness and justice, I know of no case law, I haven't been able to find it because it likely hasn't probably happened. But I don't know. I haven't found any case law on that to provide to you. But it is entirely inconsistent. And it isn't fair. And in this particular case, why Dr. Pop was never really looked at in terms of what his opinions are, including the fact that when he came back to Dr. Pop, as the treater, he offered him a fusion surgery to take care of what he said he thought was what he had from originally from the accident. I don't know. And in terms of some of the other factual findings, I think that the commission improperly found a judicial admission against Mr. Dickman, when, which I think was a chance statement by a nervous party about whether Dr. Ganju was involved in the workers' compensation case, where he had testified that the workers that her bills were paid through the wife's health insurer. And obviously, there was confusion, an honest mistake in terms of what he thought with regard to Dr. Ganju. I think that the real problem here is he was disabled in 2014. The city acted on that. Mr. Dickman, Officer Dickman acted on it. There wasn't a favorable opinion that he could return back to work that the city through Dr. Levin had up until 16 months later. And they essentially starved him out. He had no income. He had to go work somewhere else. And Dr. Koh, and Dr. Suchi, and the other Dr. Pop, all had indicated that this was an aggravation of the pre-existing condition. Thank you, Mr. Murphy. The red light is on. Oh, I'm sorry. I didn't see that. Are there any further questions for Mr. Murphy from the court? Okay. Well, thank you, counsel, both for your arguments in this matter this morning.